UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br> v.<br><br>Michael Brown,<br><br>   Defendant. | Case No. 1:18-cr-20505<br><br>District Judge Thomas Ludington |

**DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE DUE TO COVID-19 AT FCI MILAN & DEFENDANT'S COMPROMISED HEALTH**

Defendant Michael Brown, by and through undersigned counsel, moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the extraordinary and compelling reasons presented by the COVID-19 pandemic. Mr. Brown's BOP-documented hypertension, combined with prior exposure to both tuberculosis and hepatitis C, that he is prediabetic, and his age, make him unusually susceptible to a severe and perhaps fatal outcome if he were to contract the disease, which is currently afflicting his place of confinement, FCI Milan. For this reason, and as more fully explained in the attached memorandum, the Court should grant this motion and reduce Mr. Brown's sentence of imprisonment to time served.

                Respectfully submitted,

                /s/ Benjamin C. Glassman
                Benjamin C. Glassman
                SQUIRE PATTON BOGGS (US) LLP
                201 E. Fourth Street, Suite 1900
                Cincinnati, OH 45202
                (513) 361-1200
                Email: benjamin.glassman@squirepb.com

**MEMORANDUM IN SUPPORT OF MOTION**

The compassionate release statute, as amended by the First Step Act of 2018, allows this Court to reduce a previously imposed sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court may act "upon motion of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* at § 3582(c)(1)(A). In evaluating this motion, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable" and must find that a reduction in sentence "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* All of these criteria are met in this case.

1. Extraordinary and compelling reasons warrant reducing Mr. Brown's sentence to require his immediate release from FCI Milan.

Mr. Brown is currently serving a 60-month term of imprisonment for possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). He has been in custody since 2018 and is currently confined at FCI Milan. According to the website of the Bureau of Prisons, Mr. Brown is projected to be released next year, on October 21, 2021.

COVID-19 is a viral disease for which there is currently neither vaccine, treatment, nor cure. It is highly infectious and particularly likely to spread among populations where individuals are incapable of remaining physically distant from one another. Among viral diseases, the mortality rate for COVID-19 is high, and according to the Centers for Disease Control and Prevention, via its public website on this issue (most recently revised August 12, 2020), those who might be at an increased risk for severe disease include people with "hypertension or high

blood pressure." The CDC further advises that older adults, and anyone with chronic underlying medical conditions, may be at higher risk for severe results from COVID-19. (*Id.*)

Mr. Brown has several health conditions that place him in a higher risk category identified by the CDC. Although Mr. Brown's presentence report does not reflect the health conditions that place him at higher risk, his medical records from the Bureau of Prisons do. Specifically, BOP physicians diagnosed Mr. Brown with hypertension–high blood pressure and have continued to treat him continuously for that condition. (*See, e.g.,* Appendix at 4–5, 17, .) They have prescribed multiple different medications for the condition, but his blood pressure remains elevated. (*E.g., id.* at 82.)

In addition to his hypertension–high blood pressure, Mr. Brown has three other health conditions that contribute to elevating his risk for severe complications from COVID-19. One is that BOP physicians have identified him as prediabetic. (*Id.* at 90.) Second, years ago Mr. Brown was exposed to tuberculosis. A 2019 examination of his lungs by BOP physicians determined that his lungs were then clear, but also noted "blunting of the left lateral and posterior costophrenic sulci, most likely from pleural thickening/scarring." (*Id.* at 73.) According to the International Union Against Tuberculosis and Lung Disease, "since COVID-19 affects the lungs and we know that there is usually some left-over damage in the lungs following TB disease, this may put you at increased risk of developing more severe COVID-19 symptoms." (https://www.theunion.org/news-centre/covid-19/covid-tb-faqs-version-2#eight, visited August 13, 2020). Third, Mr. Brown was previously exposed to hepatitis C while in the state penitentiary. (*See* Appendix at 10, 15, 19.)

On top of these health conditions, Mr. Brown is well into his fifties. His age and underlying health conditions together place him at an elevated risk for severe results if he becomes infected with COVID-19.

The disease is present within the walls of FCI Milan, the low-security facility where Mr. Brown is confined. According to the Bureau of Prisons, via its website for this issue, nearly 100 inmates at FCI Milan have tested positive for the virus, and three have died from it. Staff members are also contracting the disease at FCI Milan. There are current active cases at FCI Milan.

It is extraordinarily difficult to combat the spread of COVID-19 within a prison, as both courts and the CDC have recognized. *United States v. Gardner*, No. 14-cr-20735-001, 2020 U.S. Dist. LEXIS 129160, at *4–*5 (E.D. Mich. July 22, 2020). Even under otherwise ideal circumstances, prison conditions prevent the kind of physical distancing necessary to prevent the spread of this virus. *Id.* This is particularly so at a low-security facility with dormitory housing, like FCI Milan. *See Wilson v. Williams*, No. 4:20-cv-00794, 2020 U.S. Dist. LEXIS 70674, at *4 (N.D. Ohio Apr. 22, 2020), *preliminary injunction vacated*, 961 F.3d 829 (6th Cir. 2019). The conditions at FCI Milan and other similar federal correctional facilities may be seen vividly through videos publicly available on YouTube. *See* "Poor Conditions in FCI Milan during Pandemic," available at https://www.youtube.com/watch?v=PurxDDoxvAg (last visited July 27, 2020); "Prisoners Are Using Smuggled Cellphones to Show the Coronavirus Nightmare Behind Bars," *VICE News*, available at https://www.youtube.com/watch?v=DmODcwJmf4c (last visited July 27, 2020).

Mr. Brown's proximity to the extreme danger of COVID-19 is real. Not only is the virus active within FCI Milan, but also Mr. Brown's own cellmate tested positive for it, as reflected in Mr. Brown's medical records. (*See* Appendix at 82.)

This combination of conditions—the presence of COVID-19 at a federal prison and a particular prisoner's elevated risk for severe complications should he become infected—constitute "extraordinary and compelling reasons" warranting a reduction in sentence under §3582(c)(1)(A)(i). *E.g., United States v. Dean*, No. 11-20195, 2020 U.S. Dist. LEXIS 130780, at *6 (E.D. Mich. July 24, 2020); *United States v. Alam*, No. 15-20351, 2020 U.S. Dist. LEXIS 130118, at *11 (E.D. Mich. July 23, 2020) (so holding and listing authorities).

2. Applicable policy statements

The applicable policy statement issued by the Sentencing Commission for compassionate release is U.S.S.G. § 1B1.13. Although the statement has not been updated since § 3582(c)(1)(A) was amended in 2018 to empower district judges to act on defendants' motions, courts have identified two parts of the policy as consistent with the circumstances here. One is comment note (1)(A)(ii), which provides that extraordinary and compelling reasons exist where a defendant is "suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Under normal conditions, it is not clear that Mr. Brown's medical conditions would meet this standard, but in light of COVID-19 and the inability for someone in Mr. Brown's position to take the necessary steps to guard against the virus, this policy statement is satisfied. *United States v. Mitchell*, No. 4:13-cr-20468, 2020 U.S. Dist. LEXIS 123327, at *9–*10 (E.D. Mich. July 14, 2020) ("During a dangerous pandemic, Mitchell's diabetes and hypertension 'substantially diminish' his ability 'to provide selfcare

within the environment of a correctional facility.'"). The other relevant part of the statement is comment note 1 subdivision (D), which recognizes that there may exist in a particular case "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." And "here, the COVID-19 pandemic, when combined with medical conditions known to exacerbate the risk of substantial injury or death, is an extraordinary and compelling factor which may be considered." *Gardner*, 2020 U.S. Dist. LEXIS 129160, at *14.

The policy statement also requires that the defendant not be a danger to any person or the community, as provided in 18 U.S.C. § 3142(f), and Mr. Brown is not because of his rehabilitation, release plan, and conditions of supervision. These are further discussed below.

3. Considering the § 3553(a) factors

Consideration of the § 3553(a) factors supports reducing Mr. Brown's sentence under these circumstances. Regarding the history and characteristics of the defendant, as this Court will recall from the sentencing hearing, the instant case represents Mr. Brown's first federal conviction. He spent the bulk of his adult life in state custody, and examination of the presentence report reveals that this was a history heavily influenced by narcotics addiction (thus the convictions for low-level narcotics and for theft or robbery) and the absence of a support structure. And that was true in the instant offense, too; after serving over 13 years in state prison, Mr. Brown was on supervision for only 3 months, and although he made inroads toward stability, he relapsed into addiction and the instant offense. As all parties and the Court recognized at sentencing, Mr. Brown desired to change and intended to take advantage of rehabilitative programs offered by the federal system. And he has.

During his incarceration, Mr. Brown has participated in intensive, residential drug treatment. (Appendix at 112.) He is enrolled in college classes through Jackson University. (*Id.* at 112, 121.) And his disciplinary history in federal prison is unblemished. (*Id.* at 110, 114.) Likely for these reasons, the BOP assesses Mr. Brown to have a low risk of recidivism. (*Id.* at 117.)

All of the positive support structures that were noted at his sentencing hearing remain. Mr. Brown remains in a committed relationship with Ms. Abbs, who has written a letter in support of this motion. (*Id.* at 128.) He would be welcomed back by his church community, as the attached character reference reflects. (*Id.* at 130.)

Equally important, Mr. Brown on release will have the benefit of supervision by the United States Probation Office. Not only has Mr. Brown completed substantial drug rehabilitation while in federal prison, the conditions of his supervision require his participation in a substance abuse program.

It is worth explicitly addressing the state charges that were outstanding at the time of Mr. Brown's federal sentencing because they involved a firearm. First, the charges have been resolved. Second, while federal sentencing—much less a post-sentence motion for compassionate release—is not the place to litigate collaterally the facts underlying state charges, Mr. Brown respectfully requests that the Court include in its assessment of the import of those charges that their ultimate resolution was his plea to unlawfully possessing a concealed weapon under a disability, the dismissal of the other counts, and a total sentence of 344 days in custody, to be served concurrently with his federal sentence, with credit for 344 days; that is, time served. (Appendix at 123.) Third, in addition to the support structures, supervision, and rehabilitation discussed above, Mr. Brown does not run from or seek to hide this prior conduct. He will never

touch a firearm again (and would so state to the Court under oath if a hearing were needed on this motion).

All of the above factors concern not only Mr. Brown's history and characteristics, but also support that a reduced sentence, removing Mr. Brown from the threat of infection and death from COVID-19, would still support the need for the sentence imposed to protect the public. Further in support of that factor is that Mr. Brown has a release plan that can inspire confidence. Specifically, his sister Cheryl Brown has agreed that Mr. Brown can live with her upon his release. Ms. Brown is a medical assistant at Ascension St. Mary's Hospital in Saginaw, Michigan. She currently lives alone in a two-bedroom apartment in Saginaw. Mr. Brown would be able to have one of these two bedrooms. Ms. Brown has further committed that, if Mr. Brown is ordered released from custody, she or one of her children will provide transportation for Mr. Brown from FCI Milan.

The need for the sentence imposed to "provide the defendant with…medical care…in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), which did not weigh heavily at the time of sentencing, now weighs very strongly in favor of granting this motion to reduce the sentence. The spread of COVID-19 at FCI Milan, combined with Mr. Brown's higher risk from hypertension–high blood pressure, previous exposure to tuberculosis and hepatitis C, diagnosis as prediabetic, and age, seriously alters the balance of the need for the sentence to provide him with medical care in the most effective manner. *See United States v. Williams-Bethea*, No. 18-cr-78, 2020 U.S. Dist. LEXIS 96651, at *10–*11 (S.D.N.Y. June 2, 2020) ("Due to the COVID-19 pandemic, the 'history and characteristics of the defendant' and the 'need…to provide the defendant with needed…medical care,' § 3553(a), now weigh heavily in favor of the Defendant's release, given the health risk that continued incarceration poses to her. The

Defendant is fifty-years old. She has several underlying health conditions that increase her vulnerability to COVID-19 infection and, if infected, to the risk of serious injury or death."); *United States v. Rodriguez*, No. 2:03-cr-00271, 2020 U.S. Dist. LEXIS 58718, at *32 (E.D. Pa. Apr. 1, 2020).

Finally, reducing the sentence under these circumstances would not adversely affect any of the factors in §§ 3553(a)(2)(A) and (B) or (a)(6). First, Mr. Brown has served a significant custodial sentence. He has been in custody since 2018, and his current projected release date is next year. Second, in reducing the sentence, the Court has the discretion to impose a condition of home confinement to match the remaining term of the custodial component of the sentence, if Court believes that appropriate to achieve sentencing goals. Third, the requested reduction is due solely to the combination of COVID-19 at FCI Milan and Mr. Brown's medical issues. Absent that unforeseeable development, the sentence originally imposed would continue. And as detailed above, Mr. Brown has achieved commendable rehabilitation while in prison. In other words, the time Mr. Brown "has served in prison has already achieved some of the original sentence's retributive, deterrent, and incapacitate purpose…. And the Defendant's continued detention now poses…imminent danger of serious injury and death—a circumstance that the Court never considered when imposing its sentence, and certainly a risk in gross disproportion to the underlying conduct here." *Williams-Bethea*, 2020 U.S. Dist. LEXIS 96651, at *12. The statutory sentencing factors therefore support this motion.

4. Timing of the Court's action on this motion

Mr. Brown requested compassionate release by letter to the warden dated June 10, 2020 and received five days later. (Appendix at 120.) The request was denied. Because § 3582(c)(1)(A) authorizes the Court to act on a defendant's motion after the "the lapse of 30

days" from the warden's receipt of a request, this Court may act on the instant motion now. *See United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).

## CONCLUSION

The Court should grant this motion and reduce Mr. Brown's sentence of imprisonment to time served.

Respectfully submitted.

/s/ Benjamin C. Glassman
Benjamin C. Glassman
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202
(513) 361-1200
Email: benjamin.glassman@squirepb.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with this Court's CM/ECF system this 17th day of August, 2020, which provides electronic service on all parties.

/s/ Benjamin C. Glassman
Benjamin C. Glassman
