UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 18-CR-20505
                                                Honorable Thomas L. Ludington

MICHAEL BROWN,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE

On December 11, 2018, Defendant Michael Brown pled guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a). ECF No. 16. He was sentenced to 60 months imprisonment at Federal Correctional Institute Milan ("FCI Milan"), in Washtenaw County, Michigan. ECF No. 25. On August 17, 2020, Defendant, through counsel, moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 30. Timely response and reply briefs have been filed. ECF Nos. 32, 33. For the reasons set forth below, Defendant's motion will be denied with prejudice.

**I.**

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a

> reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). On June 15, 2020, Defendant sent a written request for compassionate release to Warden Jonathan Hemingway. ECF No. 31 at PageID.256. Defendant's request was denied on July 23, 2020 because his "current debilitated medical condition, with or without the spread of the COVID-19 virus, d[id] not meet the [BOP] criteria." *Id.* at PageID.255. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying conviction is for one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a). ECF No. 16. Drug-related offenses are serious, and Defendant has a substantial portion of his 60-month sentence remaining.[1] Additionally, this was not Defendant's first drug-related offense. According to the Presentence Investigation Report, Defendant was convicted in 1996 and 1997 of manufacture or delivery of a controlled substance. Furthermore, as explained in Section I.C.2. below, Defendant's extensive

---

[1] Defendant's projected release date, according to the BOP, is October 18, 2021—just over a year from the date of this opinion. ECF No. 31 at PageID.243.

criminal history and ongoing struggle with addiction demonstrate that he would be a danger to others or the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

## C.

The next inquiries to be resolved are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant has failed to show an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

## 1.

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--

>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>   (ii) The defendant is--
>
>   >   (I) suffering from a serious physical or medical condition,
>   >
>   >   (II) suffering from a serious functional or cognitive impairment, or
>   >
>   >   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
> >   (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> >   (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant is a 54-year-old male that suffers from hypertension, prediabetes, and was previously exposed to tuberculosis and hepatitis C. ECF No. 30 at PageID.128. In his opening brief, Defendant argued that "[h]is age and underlying health conditions together place him at an elevated risk for severe results if he becomes infected with COVID-19." *Id.* at

PageID.129. The Government, in response, contended that hypertension itself is not a risk factor for COVID-19 and that Defendant's hypertension is managed with medication. ECF No. 32 at PageID.283. The Government also clarified that Defendant does not have active tuberculosis or hepatitis C infections. *Id.* In his reply brief, Defendant reasserted the severity of his conditions, including his exposure to tuberculosis and hepatitis C, and offered the opinion of Dr. George Bren, a cardiologist based in Washington D.C.[2] ECF No. 33 at PageID.293–95, 301. After reviewing Defendant's medical records, Dr. Bren concluded that "[Defendant's] hypertension approximately doubles his risk of death or serious COVID disease as compared to non-hypertensive individuals." *Id.* at PageID.304. Dr. Bren also reviewed the Government's response brief and opined that "infection and mortality rates are higher in federal inmates than the general US population, notwithstanding the precautionary measures taken by the BOP." *Id.*

Subsection (A) requires that Defendant suffer from either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the custodial environment. U.S.S.G. § 1B1.13. Despite Dr. Bren's opinion, the facts do not support such a finding. Many "courts have declined to grant compassionate release based on a diagnosis of hypertension where no other high-risk medical conditions are present." *United States v. Nash*, No. CR12-23RSM, 2020 WL 4758260, at *3 (W.D. Wash. Aug. 17, 2020). Notably, the CDC does not seem to share Dr. Bren's opinion. *See* People With Medical Conditions, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions [https://perma.cc/CW7S-48BS] (warning individuals with serious cardiovascular conditions and providing that "*other* cardiovascular or

---

[2] Dr. Bren's opinion was duly considered in deciding Defendant's motion, even though the Government had no opportunity to respond to his assessment.

cerebrovascular disease, such as hypertension (high blood pressure) or stroke, *may* increase your risk of severe illness from COVID-19") (emphasis added).

Even if Dr. Bren is correct, however, Defendant has alleged only an "elevated risk for a severe or fatal outcome," ECF No. 33 at PageID.295, and "a generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

Defendant's prediabetes, and exposure to tuberculosis and hepatitis C similarly fall short. *See United States v. Hazam*, No. 18-CR-30029, 2020 WL 3265349, at *2 (C.D. Ill. June 17, 2020) ("While the CDC recognizes diabetes as a comorbidity that may increase the risk of serious injury or death from COVID-19, the same is not true of prediabetes . . . Moreover, much like with prediabetes, it is not a certainty that a latent TB infection will progress to an active TB infection."); *United States v. Pemberton*, No. 8:16-CR-275-T-33JSS, 2020 WL 3452227, at *2 (M.D. Fla. June 24, 2020) (finding that "exposure to the germ that causes tuberculosis" along with other conditions like hypertension and obesity did not satisfy subsection (A)); *United States v. Roden*, No. 7:16-CR-00069, 2020 WL 3871168, at *3 (W.D. Va. July 9, 2020) (denying compassionate release to defendant diagnosed with hepatitis C because "[a]s the CDC states, there is no information about whether [hepatitis C] places [defendant] at an increased risk of contracting COVID-19 or of COVID-19 resulting in a severe illness").

Of course, Defendant has a right to be concerned for his health, and the BOP's management of the pandemic has not gone without criticism. *See United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *4 (E.D. Mich. June 10, 2020) (discussing outbreak at FCI Milan). Regardless, the situation at FCI Milan has improved dramatically since the start of the pandemic. While 85

inmates and 55 staff at FCI Milan have recovered from a COVID-19 infection, the facility is currently reporting only one active infection in a staff member. COVID-19, Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/7CDX-YAKG] (last visited Oct. 6, 2020). Furthermore, Defendant does not allege that he has received inadequate or untimely medical care while at FCI Milan.

Accordingly, Dr. Bren's conclusion that mortality and infection rates are higher in BOP facilities is largely inapposite. "[Section] 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020). Defendant is housed at FCI Milan, not BOP facilities generally, and if he were released, he would not suddenly assume the physical characteristics of the "general population." Whether Defendant's situation is extraordinary and compelling must be decided with respect to his particular traits and circumstances. Without minimizing Defendant's concerns, "the pandemic is a global phenomenon and some risk is inherent no matter where [Defendant] resides, either at home or in prison." *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020) (denying compassionate release to 48-year-old with hypertension and obesity). Accordingly, Defendant's situation does not satisfy subsection (A).

The other subsections provided in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) of the policy statement commentary because he is 54 years old. Additionally, he does not qualify under subsection (C) because has not alleged the death or incapacitation of a spouse or caregiver of his minor children. Accordingly, Defendant has not shown an extraordinary or compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors strongly support the conclusion that Defendant would be a danger to others or the community if released. Defendant has, as he describes, "spent the bulk of his adult life in state custody." ECF No. 30 at PageID.131. The Presentence Investigation Report reveals that from age 17 onward, Defendant was involved in a string of criminal offenses including burglary or theft (1984, 1988, 1989), robbery (1988), and manufacture or delivery of heroin (1996, 1997). Defendant's behavior was no better in the 2000s.

In 1999, Defendant was paroled for his recent heroin conviction but was arrested for violating parole in April 2000 and returned to custody. He was eventually discharged in September 2000. A month later, he was arrested for retail fraud. About a week after being fined for the retail

fraud, Defendant walked into a video store with what appeared to be a firearm in his pocket and asked the manager if the store clerk's "life was worth more than money." Defendant was arrested the next day and later convicted of armed robbery. He was sentenced in 2002 to 14 to 30 years imprisonment but, in 2012, his sentence was reduced to 165 months to 14 years. He was paroled in 2014. In June 2018, Defendant was arrested for and later convicted of the underlying offense: possession with intent to distribute cocaine. Defendant was arrested after police executed a controlled purchase of cocaine from his residence. Police searched the residence and discovered 79 grams of cocaine base and 22 grams of powder cocaine. At the time of his arrest, Defendant was on bond for assault with a weapon and related firearm offenses. Defendant represents that he later pled guilty to the assault and firearm charges and was sentenced to 344 days in custody (time-served). ECF No. 30 at PageID.132.

Defendant contends that narcotics addiction and the "absence of a support structure" contributed to his criminal conduct—a contention supported by the PSR. *Id.* at PageID.131. Defendant began using cocaine at 17 years old and was using cocaine daily prior to his arrest for the underlying offense. The frequency and nature of Defendant's prior offenses also seem consistent with severe drug addiction. Defendant, nonetheless, argues that he is no longer a danger to the community, citing "substantial evidence of rehabilitation while in prison (including an unblemished disciplinary record and participation in RDAP and educational programming), a BOP assessment that he is a low recidivism risk, a developed release plan, and the promise of supervision by the United States Probation Office." ECF No. 33 at PageID.296. Defendant also emphasizes the "staleness" of his prior convictions. *Id.* at PageID.296.

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage

in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). While Defendant's apparent commitment to rehabilitation is commendable, he has failed to show that his early release would not endanger the community.

First, there is no indication that Defendant has successfully completed RDAP (Residential Drug Abuse Program). He began the 500-hour RDAP on June 3, 2020. ECF No. 31 at PageID.249. Presumably, Defendant has a substantial portion of drug treatment remaining, and his successful discharge is crucial to his successful reentry into society. *Compare United States v. Lee*, No. CR DKC 12-0493, 2020 WL 4053352, at *4 (D. Md. July 20, 2020) (granting compassionate release where "drug addiction that fueled some of [defendant's] criminal conduct ha[d] been treated") *with United States v. Mack*, No. 5:16-CR-112, 2020 WL 4012837, at *2 (N.D. Ohio July 16, 2020) (denying compassionate despite extraordinary and compelling reason for release because defendant with criminal drug history and "addiction since his late teenage years" posed danger to community).

Similarly, Defendant's reliance on his "developed release plan" and the promise of federal supervision is misplaced. Defendant states that, upon release, he intends to reside with his sister in Saginaw, Michigan. ECF No. 30 at PageID.133. It is unclear, however, whether his sister intends to support him indefinitely, given that Defendant has no demonstrated record of employment. Furthermore, Defendant was arrested for the underlying offense after he was caught selling cocaine from his apartment. A condition of release requiring Defendant to remain at home would only be as effective as Defendant's willingness to comply and to avoid criminal conduct while home. Simply put, Defendant lacks a reliable record of compliance.

Beyond the risk of continued drug dealing, though, Defendant's conviction for armed robbery and recent firearm offenses raise concerns of physical violence. Defendant's characterization of his armed robbery conviction and prior offenses as "stale" obscures the fact that he spent over a decade in custody and, after release, engaged in similarly serious crimes. Ultimately, Defendant's history of serious crime, addiction, and violating parole weighs heavily against him. His low BOP patterns score does not change the balance. *See United States v. Rand*, No. 3:16-CR-00029-MMD-WGC-1, 2020 WL 2733949, at *4 (D. Nev. May 26, 2020) (denying compassionate release to doctor convicted of overprescribing opioids despite BOP pattern score in minimum category). Based on the foregoing, Defendant has failed to show that he would not pose a danger to others or the community if released.

**II.**

Accordingly, it is **ORDERED** that Defendant Michael Brown's Motion for Compassionate Release, ECF No. 30, is **DENIED WITH PREJUDICE.**


Dated: October 14, 2020                s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge